IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RICHARD FERRY,

       Petitioner,

v.

STEVE BERGER, and
MICHAEL HSU,

       Respondents.

Civil No. 3:18-cv-00154-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge.

Petitioner brings this habeas corpus action challenging his 2010 conviction on several charges of sexual abuse against his two nieces.   For the reasons that follow, the Petition for Writ of Habeas Corpus is DENIED.[1]

\ \ \ \ \

\ \ \ \ \

---

[1] All parties to this action have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c).

1  - OPINION AND ORDER

## FACTUAL BACKGROUND

In July 2009, petitioner's niece SV, who was 14 at the time, disclosed to her counselor that Petitioner had touched her on her breast.   SV stated that Petitioner had also touched her sister CV, who was then 13 years of age.   SV's counselor reported SV's disclosure to the Oregon Department of Human Services ("DHS") as required by law.   DHS, in turn, contacted the police.

Detective Kari Christensen investigated the allegations and scheduled evaluations of the victims with CARES Northwest.   At CARES, CV disclosed that Petitioner had touched her on her chest, vagina, and buttocks, both over and under her clothes.   SV disclosed that Petitioner had touched her on her breasts, but stated he had not touched her vagina.

About ten days after the CARES evaluation, SV called Detective Christensen and asked to speak with her.   The detective met SV at her school, and in the presence of a School Resource Officer and Christensen, SV reiterated that Petitioner had touched her on her chest, both over and under her shirt.   SV also stated that she remembered additional information after speaking with her counselor and her sister.   She stated that Petitioner had also touched her vagina, under her clothing, and that it occurred at the same time he touched her breasts.   SV told the officers that she believed CV was in the room at the time.

In late October, Detective Christensen spoke with each of the victims again separately after they appeared and testified before the grand jury.   SV provided additional details about the abuse, stating that Petitioner had touched her on the breasts at least three times, that the touching started when she was around 12 or 13 years old, and that Petitioner had touched her vagina at

2  - OPINION AND ORDER

least once.   She also told the detective that she had seen Petitioner touch CV on the breast at least once and on the vagina at least once.    Separately, CV told the detective that Petitioner had touched her more than 25 times, both on the breasts and vagina.   She also said that she saw Petitioner touch SV on her breasts on two occasions but that she had never seen Petitioner's hands down SV's pants.   CV said she was worried about Petitioner being around other children, including her young female cousin.

At trial, the state called both victims, who each testified that Petitioner sexually abused them.   The state also called SV's counselor, who testified about her interactions with SV; Anh (the victims' mother); Detective Christensen, the lead investigator; and Dr. Christine Stampfer, a psychiatric nurse practitioner who treated CV.   Finally, the state called Dr. Linda Lorenz, a CARES pediatrician, who testified about the interview and medical examinations conducted with the victims, and who presented the video interviews CARES conducted with the victims.

The defense theory at trial was that the victims had fabricated the abuse.   The defense presented evidence that in July 2009, the victims' mother Anh had been in a fight with Petitioner's wife Tien, who is Anh's sister.   Following the fight, Anh prevented the victims from going on a weekend trip with the extended family, including Petitioner's family.   SV testified that, during that weekend, she discussed with CV and Anh "how [she] did not like" petitioner. The defense theory was that the victims had fabricated the abuse that weekend, and suggested that the victims may have had a financial motive for fabricating the abuse, may have been angry at Petitioner for punishing them, or may have been attempting to please their mother Anh.

3  - OPINION AND ORDER

The defense also presented evidence that CV had denied the abuse to her family.    Three of the victims' aunts testified that the night they returned from the weekend trip the victims missed, they asked CV whether she had been abused.    First, they asked CV while she was in a car with just her mother and the aunts.    Next, they went to Petitioner's house, where they asked CV again in the presence of more family members, including Petitioner.    Both times CV either denied the abuse or did not respond.

The defense also contended that the police had not done an adequate investigation. Counsel cross-examined the investigating detective about her decision to not interview various extended family members and her lack of thoroughness in questioning witnesses.    The defense then called several family members as witnesses.    The defense also called a psychologist as an expert witness, who testified about the importance of asking open-ended questions in child abuse cases, asking questions to determine whether the victims may have a motive to lie, and obtaining corroborating evidence.    She also described the limitations that CARES had in memorializing an accurate memory of an abuse allegation and some of her concerns with the investigation in this case specifically.

Petitioner also testified at trial, and denied any abuse occurred.    He acknowledged hugging his nieces, and stated that any physical contact that occurred was appropriate. Petitioner maintained that the victims' mother pressured the girls to falsely accuse him due to her contentious relationship with Petitioner's wife.

\ \ \ \ \

\ \ \ \ \

4  - OPINION AND ORDER

## PROCEDURAL BACKGROUND

On October 26, 2009, a Washington County grand jury indicted Petitioner on six counts of Sex Abuse in the First Degree and six counts of Sex Abuse in the Third Degree.    Resp. Exh. 102. The state moved to dismiss five of the counts before trial.    A jury found Petitioner guilty of six of the remaining counts, and acquitted Petitioner on one count of Sexual Abuse in the Third Degree.    Resp. Exh. 101, p. 4.    The trial judge sentenced Petitioner to a total of 87 months of imprisonment, followed by three years of supervised release.

Petitioner appealed, asserting that the trial court erred in admitting expert evidence about delayed disclosure by sex abuse victims, in admitting the videotaped interviews of the victims, in allowing the jury to review the videos during deliberations, in admitting a letter written by one of the victims, in denying a motion to dismiss the indictment on state and federal double jeopardy grounds, and in entering a verdict based on a non-unanimous verdict in violation of the Sixth Amendment.    Resp. Exh. 103.    The Oregon Court of Appeals affirmed in a written opinion which addressed only the admission of the victim's letter.    *State v. Ferry*, 255 Or. App. 625 (2013).    Petitioner sought review from the Oregon Supreme Court, asserting two state law claims.    The Oregon Supreme Court denied review.    *State v. Ferry*, 353 Or. 868 (2013).

Petitioner then sought state post-conviction relief ("PCR"), alleging that trial counsel was ineffective in 25 different respects (several with multiple sub-claims), that his appellate counsel was ineffective in five different respects, and that the prosecutor engaged in misconduct in seven different respects.    Resp. Exh. 109.    Following an evidentiary hearing, the PCR trial judge denied relief on each of Petitioner's claims on the merits.    Resp. Exh. 153.

5  - OPINION AND ORDER

On appeal, Petitioner assigned error to the denial of several of the claims of ineffective assistance of trial and appellate counsel.   Resp. Exh. 154.   The Oregon Court of Appeals affirmed without opinion.   *Ferry v. Popoff*, 287 Or. App. 122 (2017).   In his Petition for Review to the Oregon Supreme Court, Petitioner narrowed his arguments to four claims of ineffective assistance of trial counsel:

I.[2]   The post-conviction court erred in concluding that trial counsel was not ineffective for failing to adequately and effectively object, move to strike, and request curative instructions on the many instances [of] various witnesses vouching for the alleged victims.

(a) The trial court erroneously allowed [SV] to read to the jury a letter she had written to the prosecutor, which vouched for her credibility.

(b) Trial counsel impermissibly allowed Detective Christensen to vouch for the credibility of [CV] and [SV].

(c) Trial counsel failed to move to strike and request a curative instruction after Detective Christensen testified before the jury that she had "no concerns about [SV's] credibility as it relates to sex abuse in this case."

(d) Trial counsel failed to request that the court provide a limiting instruction to the jury instructing the jury that evidence of "delayed disclosures" cannot be considered as affirmative evidence of sexual abuse, and that the jury could only consider "delayed disclosures" to rebut any evidence of fabrication by the victims.   Without such limiting instruction, trial counsel allowed the prosecutor to argue that the victims "delays and their incremental disclosures make sense because they're telling the truth."

(e) Trial counsel failed to object and move to strike psychiatric nurse practitioner Carol Stampfer's diagnosis of adjustment disorder for

---

[2] In his Petition for Review, Petitioner began numbering his claims with a Roman numeral II.   For clarity, the court re-numbered them and refers to the claims beginning with claim I.

[CV] given that that diagnosis encompassed [CV's] report of being sexually harassed by Petitioner.

II.    The post-conviction court erred in concluding that trial counsel was not ineffective for failing to adequately and effectively creat[e] a record for appellate review through an offer of proof [of] the reasons and legal argument as to Petitioner should have been allowed to present evidence that was commensurate to the theory of his defenses.

(a) Evidence that [CV] was attempting to curry favor with the prosecution after the court sustained the prosecutor's objection to trial counsel's inquire regarding vandalism charges she was facing at the time of her trial testimony.

(b) Evidence that Quynh Buio Truong, [the victims' aunt] knew that [the victims' mother] disliked Petitioner after the court sustained the prosecutor's objection and excluded that evidence.

(c) Evidence the Petitioner was the one that punished [CV] and [SV] for inappropriate internet activity and smoking.

(d) Evidence that Tien, Petitioner's wife never observed Petitioner show any sexual interest in either [CV] or [SV].

III.    The post-conviction court erred in concluding that trial counsel was not ineffective for failing to adequately and effectively object and argue against letters written by the alleged victims as being irrelevant, and did not fall within a hearsay exception.   Counsel also failed to request a limiting instruction after the letters were allowed into evidence.

IV.    Trial counsel was required to request a limiting instruction that directed the jury to consider the several charges against multiple declarants separately.

Resp. Exh. 156, pp. 14-24.   The Oregon Supreme Court denied review.   *Ferry v. Popoff*, 362 Or. 208 (2017).

Petitioner then sought habeas corpus relief in this court.   In his Second Amended Petition, he alleges he is "entitled to relief on the grounds that he is being unlawfully detained in

7  - OPINION AND ORDER

violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution, because he was denied due process, equal protection, a fair trial, effective assistance of counsel and subjected to cruel and unusual punishment when the State illegally convicted and sentenced him."   Second Amended Petition for Writ of Habeas Corpus, ECF No. 8, p. 14.   Petitioner then references all of the claims raised on direct appeal to the Oregon Court of Appeals and in his Petition for Review to the Oregon Supreme Court, in his state PCR trial proceedings, on appeal to the Oregon Court of Appeals from the denial of PCR, and in his Petition for Review to the Oregon Supreme Court.   *Id*.

In his Memorandum in Support of Second Amended Petition, Petitioner does not address any claims of trial court error; instead, he addresses only claims of ineffective assistance of trial and appellate counsel.   In addition to the claims of ineffective assistance of trial counsel claims set forth above that Petitioner presented to the Oregon Supreme Court in his state PCR proceeding, Petitioner argues the following claims:[3]

> V.   The post-conviction court erred in concluding that trial counsel was not ineffective for failing to adequately and effectively object and argue that the prosecutor did not impermissibly comment against petitioner exercising his constitutional rights.

> VI.   The post-conviction court erred in concluding that trial counsel was not ineffective for failing to adequately and effectively cross-examine and impeach the alleged victims with prior inconsistent statements that each made.

> VII.   The post-conviction court erred in finding that appellate counsel did not provide inadequate and effective assistance of counsel and denying post-conviction relief.

---

[3]For ease of reference, the court continues with the numbering of the claims as set forth above; the actual numbering in Petitioner's Memorandum in Support differs slightly.

VIII.    The post-conviction court erred in concluding that appellate counsel was not ineffective for failing to brief an issue against the introduction of the letter written by [SV] as referenced in *State v. Ferry*, 255 Or App 625 (2013).

IX.    The post-conviction court erred in concluding that appellate counsel was not ineffective for failing to brief an issue addressing the trial court's refusal to allow into evidence prior false accusations by [SV] under *State v. LeClair*, 83 Or App 121 (1986).

X.    The post-conviction court erred in concluding that appellate counsel was not ineffective for failing to brief an issue addressing the trial court's refusal to allow into evidence that the victims' mother suffered from mental illness and induced the girls into fabricating the progressively worse allegations against Petitioner.

XI.    The post-conviction court erred in concluding that appellate counsel was not ineffective for failing to brief an issue against the introduction of character evidence of the alleged victims to rebut the State's assertion that the reason the alleged victims delayed and incremental disclosures were due to their being timid.

Respondent Hsu contends that several of the claims Petitioner appears to raise in his Second Amended Petition are not cognizable, that several claims are procedurally defaulted, and that the remaining claims were denied in state court decisions which are entitled to deference. Respondent Berger concurs with Respondent Hsu's arguments, and also contends he is entitled to dismissal because neither he nor Washington County may grant Petitioner's requested relief.[4] Respondent Berger has also filed a Motion to Dismiss the Second Amended Petition, arguing that the expiration of Petitioner's sentence and term of supervised release rendered his claims moot.

\ \ \ \ \

## DISCUSSION

I.    **Defendant Berger's Motion to Dismiss as Moot**

Defendant Berger moves to dismiss the Petition for Writ of Habeas Corpus as moot because Petitioner's term of supervised release expired during the pendency of this action.    In *Carafas v. La Vallee*, 391 U.S. 234 (1968), the Supreme Court held that a petition filed while the petitioner still was actually incarcerated did not become moot upon the expiration of the sentence due to the continuing collateral consequences of the conviction by virtue of the petitioner's inability to vote, engage in certain businesses, hold public office or serve as a juror.    *Id.* at 237-38.    Respondent Berger's argument that the expiration of Petitioner's term of supervised release means he no longer suffers collateral consequences is foreclosed by the Ninth Circuit Court of Appeals' decision in *Chacon v. Wood*, 36 F.3d 1459 (9th Cir. 1994).    There, the court "recognized an irrefutable presumption that collateral consequences result from any criminal conviction," explaining that "[o]nce convicted, one remains forever subject to the prospect of harsher punishment for a subsequent offense as a result of federal and state laws that either already have been or may eventually be passed."    *Id*. at 1463; *accord Wood v. Hall*, 130 F.3d 373, 376 (9th Cir. 1997).

Here, because there is an irrefutable presumption of "collateral consequences" flowing from the challenged conviction that will continue to affect Petitioner, this action has not been

---

[4]The court previously denied Respondent Berger's Motion to Dismiss on this basis by Order (ECF No. 34) of March 26, 2019.    Respondent Berger has not established a basis for reconsideration of that holding, and the Court does not further consider or address this defense.

10  - OPINION AND ORDER

rendered moot by the expiration of his sentence.    Accordingly, the court denies Respondent Berger's motion to dismiss the petition based on mootness.

## II.    Claims Not Addressed in Petitioner's Memorandum in Support

As noted, although his Second Amended Petition for Writ of Habeas Corpus references all of the claims made throughout Petitioner's direct appeal and state PCR proceedings, his Memorandum in Support addresses only claims of ineffective assistance of trial and appellate counsel.    As such, Petitioner has not sustained his burden to demonstrate why he is entitled to relief on the claims alleged but not addressed.    *See Lampert v. Blodgett*, 393 F.3d 943, 970 n. 16 (9th Cir. 2004).    Nevertheless, the court has reviewed the remaining claims and is satisfied that Petitioner is not entitled to habeas corpus relief.

## III.    Procedural Default

A habeas petitioner must exhaust his claims by fairly presenting them to a state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims.    *Rose v. Lundy*, 455 U.S. 509, 519 (1982).    "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'"    *Casey v. Moore*, 386 F.3d 896, 915-916 (9th Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986)).    If a habeas litigant failed to present his claims to the state courts in a procedural context in which the merits of the claims were actually considered, the claims have not been fairly presented to the

state courts and therefore are not eligible for federal habeas corpus review. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule or failed to raise the claim at the state level. *Carpenter*, 529 U.S. 446, 451 (2000); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for failure to present the constitutional issue to the state court or makes a colorable showing of actual innocence. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Sawyer v. Whitley*, 505 U.S. 333, 337 (1992); *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

In his Petition for Review to the Oregon Supreme Court in his PCR proceeding, Petitioner raised only the claims of ineffective assistance of trial counsel set forth in Claims I through IV above. In his Memorandum in Support of his Second Amended Petition, however, he argues two additional claims of ineffective assistance of trial counsel and five claims of ineffective assistance of appellate counsel, as set forth in Claims V through XI above. Morever, Petitioner did not fairly present Claim I(a) to the PCR trial court; even though he raised it in the PCR appeal, he did not allege in the PCR trial court that counsel should have objected to the letter as improper vouching. *See Johnson v. Myrick*, 285 Or. App. 395, 399 (2017) (appellate courts cannot grant relief on a claim that is not pleaded in the PCR petition and not preserved). Finally, for the same reason Petitioner did not fairly present the claim alleged in Ground III that

12  - OPINION AND ORDER

trial counsel was ineffective in failing to object to admission of the victims' letters on relevance grounds; although he raised it on appeal he did not allege it in his PCR petition.

Accordingly, these claims are procedurally defaulted. Because Petitioner has not established cause and prejudice or a fundamental miscarriage of justice to excuse his procedural default, habeas corpus relief is denied on these claims.

## IV.    Relief on the Merits

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), habeas corpus relief "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d).

A state court decision is "contrary to" established federal law if it fails to apply the correct Supreme Court authority, or if it reaches a different result in a case with facts "materially indistinguishable" from relevant Supreme Court precedent. *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision is an "unreasonable application" of clearly established federal law if the state court identifies the correct legal principle but applies it in an "objectively unreasonable" manner. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam); *Williams*, 529 U.S. at 407-08, 413; *see also Early v. Packer*, 537 U.S. 3, 11 (2002) (per curiam) (state court decisions that are not "contrary

13  - OPINION AND ORDER

to" Supreme Court law may be set aside only "if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law, or are based on 'an unreasonable determination of the facts'").

It is clearly established federal law that a claim of ineffective assistance of counsel requires a habeas Petitioner to prove that counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.    *Strickland v. Washington*, 466 U.S. 668, 687-88 (1987).    Failure to satisfy either prong of this test obviates the need to consider the other.    *Id*. at 687.

This court's inquiry under *Strickland* is highly deferential.    When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review."    *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009).

A.    **Trial Counsel's Failure to Adequately and Effectively Object, Move to Strike, and Request Curative Instructions as to Many Instances of Witnesses Vouching for the Alleged Victims**

Petitioner exhausted his state court remedies on his claims that trial counsel should have objected to, moved to strike, and requested curative instructions  on the basis of improper vouching in three respects:   (1) his claim that trial counsel impermissibly allowed Detective Christensen to vouch for the credibility of the victims and failed to move to strike and request a curative instruction after Detective Christensen testified that she did not have concerns about SV's credibility; (2) his claim that trial counsel failed to request the court to provide a limiting

instruction to the jury on the issue of "delayed disclosures" of sexual abuse; and (3) his claim that trial counsel failed to object to and move to strike testimony from a psychiatric nurse practitioner that a diagnosis of adjustment disorder of CV encompassed CV's report of being sexually harassed by Petitioner.

### 1.    Detective Christensen's Testimony

As noted above, a substantial part of the defense theory was that the lead investigator, Detective Christensen, did not adequately investigate the case.    Petitioner's trial counsel questioned the Detective about her investigation, and specifically whether she questioned the victims' mother, Anh, about the inter-family conflict or other potential motives for the victims to lie.    Counsel then asked Detective Christensen if the CARES social worker's interview with the victims' mother raised concerns about SV's credibility:

> COUNSEL:    And during that - that interview did you become aware of concerns about [SV]'s credibility?

> WITNESS:    I don't recall.

> COUNSEL:    If during that - that kind of interview scenario at CARES, you got information that concerned you about whether somebody was credible -

> WITNESS:    Uh-huh.

> COUNSEL:    - whether they tended to be reliable in the things that they reported, would you have followed up about that?

> WITNESS:    If I didn't think they were telling the truth, yes, I was.

> COUNSEL:    Or if there was information that someone didn't think they were telling the truth -

> WITNESS:    Sure.

15  - OPINION AND ORDER

>COUNSEL:    - would you have followed up on that?

>WITNESS:    Sure.

Petitioner contends that by eliciting this testimony, trial counsel impermissibly allowed the Detective to vouch for SV's credibility.

After the cross-examination, on re-direct the prosecutor followed up by asking if Detective Christensen ever had concerns about SV's credibility:

>STATE:    Now, you were asked questions by the defense attorney at CARES whether any issue ever came up about [SV]'s credibility.    Do you remember being asked those questions?

>WITNESS:    I do.

>STATE:    Do you or have you ever had concerns about [SV]'s credibility as it relates to sex abuse in this case?

At this point, trial counsel objected to the question as an improper comment on credibility, which the trial court sustained.    Petitioner contends trial counsel should have moved to strike this testimony or request a curative instruction.

The PCR trial court rejected Petitioner's claim as to Detective Christensen's testimony:

>6.    Trial attorney, on cross, asked Det [Christensen] if she became aware at Cares about concerns that [SV] not credible.    The det testified that she didn't remember.    The defense had already made it clear that they were going to argue strongly that the police jumped to a conclusion and failed to investigate other issues.    This opened the door to the DA asking the det if she would have followed up if she had that information from Cares. The question was proper.

Resp. Exh. 153, p. 2.    As to the failure to request a curative instruction, the PCR trial court found "no inadequacy in failing to request" it, as "[t]hey are comments on the evidence and not necessary to a fair and impartial verdict."    Resp. Exh. 153, p. 3. The PRC trial concluded,

16  - OPINION AND ORDER

"[t]here was no inadequacy on the part of either trial attorney and no prejudice caused by the representation."

The PCR court's conclusion was not contrary to or an unreasonable application of *Strickland*.   Detective Christensen did not directly testify that she believed the victims, nor is her testimony tantamount to saying so.   *See Easter v. Mills*, 239 Or. App. 209, 215 (2010) (holding that a mother's testimony that she did not know of any motive that her daughter had to lie was not an impermissible comment on credibility).   In any event, trial counsel made a reasonable, strategic decision to elicit the testimony to bolster the defense theory that the state failed to conduct an adequate investigation.   Moreover, on cross-examination after trial counsel explained the basis for objecting, "[t]hat's clearly an improper question . . . calls for a witness to comment on the credibility of another witness," the trial judge sustained the objection.   Under these circumstances, reasonable counsel could make a strategic decision to decline to move to strike and request a curative instruction to avoid drawing further attention to the testimony. Finally, Petitioner has not demonstrated prejudice.   The challenged testimony did not directly vouch for the witnesses' credibility and, given the evidence of guilt, Petitioner has not established that Detective Christensen's statement had a tendency to affect the jury's verdict.

## 2.    Evidence of Delayed Disclosures

The state elicited testimony from several witnesses that it is common for child sex abuse victims to wait for some time after the abuse before disclosing it.   Petitioner contends that trial counsel was ineffective for failing to request that the court instruct the jury that the victims' delay in reporting "cannot be considered as affirmative evidence of sexual abuse."   Petitioner

has not, however, identified any testimony in which a witness stated that the victims' delayed disclosures affirmatively demonstrated that they had been abused.   In fact, a defense expert testified that, although delayed disclosure is common, the delay "does not seem to be at all related to whether the statement is true or false."   Given this testimony, counsel would not have had any reason to request a curative jury instruction.   Likewise, although Petitioner contends that the prosecutor improperly used the experts' testimony in closing to argue that the victims' delay tended to demonstrate that they were telling the truth, the record belies this argument.   The prosecutor simply did not do so.

Petitioner has not established that the PCR trial judge improperly applied *Strickland* to conclude that Petitioner had not established ineffective assistance of counsel as to this claim. Accordingly, that decision is entitled to deference.

### 3.    Diagnosis of Adjustment Disorder

Petitioner next argues that trial counsel should have objected to psychiatrist nurse practitioner Dr. Carol Stampfer's testimony that she diagnosed CV with an adjustment disorder. Dr. Stampfer testified about treatment of CV which occurred before the victims disclosed their abuse.   Dr. Stampfer saw CV only once or twice, and diagnosed her with adjustment disorder with depression.   CV told Dr. Stampfer that an uncle had "sexually harassed" her and also told her about other issues, including conflicts with her mother due to cultural differences and conflicts with her extended family.   On cross-examination, Dr. Stampfer testified that part of what helped her reach the diagnosis of adjustment disorder was the report of being sexually

harassed by an uncle, but on re-direct agreed that CV spent more time talking about social issues with her mother than the sexual harassment.

Petitioner contends that Dr. Stampfer's diagnosis was necessarily based on her assessment of CV's believability, such that it rose to the level of improper vouching of CV's character. Nothing in the record, however, suggests that the diagnosis was based solely on CV's credibility; indeed Dr. Stampfer testified that the diagnosis was also based, at least in part, on verifiable symptoms such as self-harm behavior. Thus, Petitioner has not established that the testimony was inadmissible, and the PCR court's conclusion that Petitioner failed to demonstrate deficient performance or prejudice is entitled to deference.

## B.    Failure to Make Offers of Proof

Petitioner next contends that trial counsel was ineffective in failing to make offers of proof after the trial court sustained the prosecution's objections to certain evidence: (1) evidence of vandalism charges against CV; (2) evidence that the victims' other aunts knew the victims' mother disliked Petitioner; (3) evidence that the victims' aunt would have testified that Petitioner disciplined the victims; and (4) evidence that Petitioner never indicated a sexual interest in the victims. As to the first three, the PCR trial court rejected the claims as follows:

> 8.    The trial attorney did not make any offers of proof concerning items listed in claim 13. There is insufficient evidence in this proceeding to know if there was evidence to present on the vandalism charge. It was not relevant if Anh's sister didn't like Pet unless that could somehow be connected to the girls making the charges. There was testimony that pet disciplined the girls for several things.

Resp. Exh. 153, p. 3.   The PCR trial court's conclusion that Petitioner failed to establish prejudice under these circumstances is not contrary to or an unreasonable application of *Strickland*.

As to the fourth claim, the court notes that while examining Petitioner's wife defense counsel asked if Petitioner had ever done or said anything in her presence "that indicated to [her] that he had a sexual interest in" the victims.   The witness responded, "No," before the trial court sustained the prosecutor's objection to the question.   As a result, the trial record adequately demonstrated the evidence trial counsel hoped to elicit, a sufficient offer of proof for appellate review.   *See State v. Smith*, 194 Or. App. 697, 703 (2004) (where trial court sustained prosecutor's objection after witness answered question which provoked the objection, the defendant was not required to do any more to preserve his claim of error when the court foreclosed the line of inquiry).   Under these circumstances, Petitioner has not established counsel was insufficient.

### C.    Failure to Request Limiting Instruction Regarding SV's Letter

The prosecution offered letters each victim had written explaining their motivations to come forward to rebut the defense theory that the victims fabricated the abuse allegations.   SV's letter stated that she did not "ask for much" but "just" wanted an apology and for her entire family to believe her.   She stated:

> This is -- this has been a difficult challenge for me – for me to overcome.   I have learned important lessons from this.   I learned from one of my school officer, detective officer, the Hillsboro Police Department, they both said it's not my fault and stand up for yourself and you're a brave little girl.   Another thing that my school officer said, keep your head up and don't let people put it down.   I'm grateful that I have important people believing my story.

20  - OPINION AND ORDER

Defense counsel object to the admission of the letter because of this paragraph, arguing that (1) the school officer's and detective's statements were vouching and did not rebut the defense's evidence of bias; (2) the letter was hearsay and the officials' statements were double hearsay; and (3) the officials were not identified and could not be cross-examined, violating Petitioner's right to confront them.

The prosecutor responded that the letter itself fell within the hearsay exception under state law for child-hearsay statements and that the officials' statements were not hearsay because they were offered for their effect on SV to show her motivations in coming forward.    The prosecutor also argued that the statements were not improper vouching because he was offering them to show why SV came forward, rather than to show that the police believed her.    Defense counsel reiterated her arguments and contended that, despite the prosecutor's claim that the statements were being offered only to show their effect on SV, there was no way the jury could avoid taking the letter as some form of substantive evidence.

The trial court admitted the letter.    The judge reasoned that the officials' statements were being offered for their effect on SV, and that the jury would be able to understand that and not consider those statements as substantive evidence, if given the right limiting instruction.    Trial counsel did not, however, request a limiting instruction.    The PCR trial court addressed Petitioner's claim that trial counsel was ineffective as follows:[5]

---

[5]Although Petitioner's claim before this court pertains only to the admission of SV's letter (as did his claim to the Oregon Supreme Court), at the PCR trial court level Petitioner alleged ineffective assistance as to both victims' letters, and the PCR trial court accordingly addressed them in tandem.

4.        . . .   This court would not have allowed the letters from either of the girls. The trial court accepted the DA's arguments and allowed them. Petitioner pleads that the trial attorney failed to make the proper argument, but the letters are both helpful to the defense in that they present a very sympathetic view of petitioner and show that the girls themselves want him with his family rather than in prison.   Trial attorney objected to the DA's redaction of one of the letters and chose to have it come in unredacted.   That indicates to this court a strategic decision about what was or was not prejudicial.   It would have been reasonable strategy for the defense to allow them in.   The two letters are legally similar, so are either both in or out.   The only statement in the letters that could be damaging is about people in authority believing [SV].   That could be seen as vouching, but strategically might be worth the risk.   *A limiting instruction would have been counter productive.*

Resp. Exh. 153, p. 4 (emphasis added).

In light of defense counsel's argument that there was no way the jury could avoid taking the officials' statements as some form of substantive evidence, counsel could reasonably conclude that a limiting instruction would do no good and would in fact draw more attention to the evidence.   As a result, Petitioner has not established that it was unreasonable for the PCR court to conclude that counsel did not perform deficiently.   At a minimum, it is not so unreasonable that no fairminded jurist could agree with it.

**D.     Failure to Request Limiting Instruction Directing the Jury to Consider Evidence as to Each Victim Separately**

Finally, Petitioner argues trial counsel was ineffective for failing to request a limiting instruction directing the jury to consider the several charges against multiple defendants separately.   He contends that the lack of a such a jury instruction permitted the jury to consider evidence concerning the abuse of each victim for propensity purposes.

22  - OPINION AND ORDER

As noted above, the defense theory at trial was that the victims were fabricating the abuse allegations in a complicated family context.   Indeed, counsel treated all the charges against Petitioner as one false allegation; counsel argued that the victims colluded to say that they each saw the other being abused, and their mother was the driving force behind their allegations.   A jury instruction requiring the jury to consider the charges independently would have been inconsistent with the theory that the jury should consider the charges together as one fabricated allegation.   Accordingly, trial counsel was not insufficient in failing to request the instruction. In any event, Petitioner has demonstrated prejudice because he has failed to establish the trial court would have given the instruction if requested, or that the outcome of the trial would have been different.   Accordingly, Petitioner has not established the PCR trial court's decision denying relief on this claim was objectively unreasonable.

## **CONCLUSION**

For these reasons, the Court DENIES Respondent Berger's Motion to Dismiss (ECF No. 63), and DENIES the Second Amended Petition for Writ of Habeas Corpus (ECF No. 8).

The Court DENIES a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right.   *See* 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 23rd day of August, 2021.

       /s/ John V. Acosta
       John V. Acosta
    United States Magistrate Judge